UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

United States of America,

          Plaintiff,

v.

Darnell Eugene Perkins,

          Defendant.

Crim. No. 12-290 (RHK/LIB)

**REPORT AND RECOMMENDATION**

---

      This matter came before the undersigned United States Magistrate Judge upon

Defendant's motion to suppress evidence obtained as a result of the search and seizure of his

vehicle. The case has been referred to the Magistrate Judge for report and recommendation

pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. The Court held a hearing on January 3,

2013, regarding the suppression motion and both parties' discovery motions in this case.[1] The

parties each made their arguments on the record. For the reasons outlined below, the Court

recommends that Defendant's motion to suppress be denied.

## I.      BACKGROUND

      On April 7, 2012, shortly after reporting for duty at approximately 6:00 p.m., Red Lake

Department Public Safety Officer Paul Smith received a call from dispatch that advised him of a

vehicle traffic incident in the Ponemah, Minnesota area with a reported injured person on the

scene. The persons involved were identified as Barney Perkins and Promise Weis[2], the victim in

this case. Officer Smith was acquainted with Mr. Perkins through his duties as an officer and

---

[1] The discovery motions were the subject of a separate order.
[2] The Court does not have a specific record as to the spelling of Ms. Weis's name.

knew him as Darnell Perkins, the Defendant in this case.  Officer Smith has also previously encountered Ms. Weis while performing his duties as a police officer.

When Officer Smith received the dispatch call, he was in the area of the Red Lake police department, which is approximately a 30-40 minute drive from the location of the vehicle incident.  While on his way to the scene, Officer Smith was advised by Officer Dau that a black Yukon or Chevy Tahoe (larger SUV vehicle) was the vehicle that Defendant normally drives.[3] Officer Smith did not observe any vehicles matching this description on his way to the scene of the incident.

When he arrived at the scene of the incident, Officer Smith observed a gray Cadillac, which he knew to usually be driven by Ms. Weis, that had sustained a "lot of damage" to the rear end; the whole rear end was pushed in.  In Officer Smith's opinion, of the extent of the damage, "it was not going anywhere without a tow truck."  Officer Smith spoke with Ms. Weis, who seemed upset, shocked, and surprised.[4]  He observed that Mr. Weis had injuries to her facial area (swelling and redness), which he believed were consistent with a vehicle accident.  He photographed her injuries and recommended that she seek medical attention.  During her conversation with Officer Smith, Ms. Weis advised him that Defendant was the person driving the vehicle that collided with the rear end of her vehicle; however, she did not provide Officer Smith with a description of the vehicle.  Ms. Weis then left with her family, and Officer Smith set out to look for the suspect.

Initially, he located a vehicle matching the description of Defendant's known vehicle previously provided by Officer Dau at the residence of Ed Cloud, approximately half a mile or so from the scene of the incident.  Officer Smith, however, observed no damage to the vehicle

---

[3] At the hearing, Officer Smith testified that Officer Dau was familiar with many of the people in the area.
[4] Officer Smith also testified that he detected the odor of alcohol, which indicted to him that she had been drinking. However, her level of intoxication was not checked, and she was not charged with any crime or violation of law.

parked at Ed Cloud's residence.  While examining the vehicle, Mr. Cloud came out to speak to Officer Smith, and Mr. Cloud advised him that the vehicle parked at his residence belonged to a family member and had been parked at that same location for about a month.  Officer Smith then advised Mr. Cloud of the incident he was investigating and the parties involved.  At that time, a black Oldsmobile drove past Mr. Cloud's residence at a high rate of speed, to which Mr. Cloud stated "there goes those Perkins boys right there."  Officer Smith pursued the Oldsmobile, and once he caught up to it, he initiated a traffic stop.

In the vehicle were Defendant and Casey Perkins, who was driving the vehicle.[5]  Officer Smith then gave Casey Perkins a verbal warning for speeding and arrested Defendant.[6]  While placing Defendant under arrest, Officer Smith observed that Defendant had burrs on his clothing and gray-colored mud on the bottom of his boots and pants.  Officer Smith informed Defendant why he was being placed under arrest and advised him of his <u>Miranda</u> rights.  Officer Smith then questioned Defendant about his involvement in the incident, to which Defendant responded that he had not been driving the vehicle alleged to have been involved in the traffic incident with Ms. Weis.  Officer Smith drove Defendant to the police detention center, where he was booked and processed.  During a search of his person incident to arrest police uncovered a vehicle key.

Officer Smith then returned to Ponemah to continue looking for the suspect vehicle.  He eventually located a vehicle matching the description of Defendant's known vehicle earlier provided by Officer Dau.  It was parked in the woods on an old trail which may have been an old housing assignment.  In the location where the vehicle was parked, Officer Smith observed a footprint and gray-colored mud that matched, in color and texture, the mud he had earlier observed on Defendant's boots and clothing when he placed Defendant under arrest.  Officer

---

[5] Casey Perkins identified himself.  Defendant gave a name different from Darnell Perkins; however, based on his familiarity with Defendant, Officer Smith knew his name was Darnell Perkins.
[6] Defendant does not challenge the validity of his arrest.

Smith also observed that the vehicle had sustained heavy damage to the front end and the wheels were bowed out. Officer Smith testified that while it would be common to see some vehicles operating in the jurisdiction he patrols that may have some damage, it would be uncommon to see vehicles with the extent of damage he observed on the subject vehicle. Officer Smith then used the vehicle key found on Defendant's person at the time of his arrest to start the vehicle. Officer Smith testified at the hearing that he did not obtain a warrant to seize the vehicle although it would have been possible for him to do so.

## II.    DISCUSSION

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions." United States v. Davis, 569 F.3d 813, 816 (8th Cir. 2009) (citing Katz v. United States, 389 U.S. 347, 357 (1967)). One of these exceptions is the "automobile exception." United States v. Williams, 616 F.3d 760, 764 (8th Cir. 2010). "The automobile exception enables an officer to seize an automobile without a warrant if they have probable cause to believe the vehicle constitutes or contains evidence of criminal activity." United States v. Linderman, No. 07-359 (MJD/FLN), 2008 WL 199913, at *2 (D. Minn. Jan. 22, 2008); see also United States v. Sims, 424 F.3d 691, 693 (8th Cir. 2005); Capraro v. Bunt, 44 F.3d 690, 691 (8th Cir. 1995) ("Because a vehicle is subject to a warrantless search on probable cause if the vehicle contains evidence of crime, the vehicle should likewise be subject to a warrantless seizure if the vehicle itself is an instrument of crime."); United States v. Rascon-Armendariz, 2005 WL 2837508, at *4 (D. S.D. Oct. 27, 2005) ("When law enforcement

has probable cause to seize an automobile, it may be seized without a warrant under the 'automobile exception' to the warrant requirement.").

Defendant does not dispute the authority or the existence of the automobile exception but argues that it does not apply in this case because the police lacked probable cause to believe that the vehicle was an instrumentality of a crime.  Specifically, Defendant argues that because Promise Weis appeared to be intoxicated and did not describe the vehicle that rear ended her vehicle, because Defendant was first seen by Officer Smith in a vehicle different from the one matching the description of the suspect vehicle, and because Defendant stated at the time of his arrest that he was not the driver of the vehicle that rear ended Ms. Weis, there was no probable cause to believe that the vehicle seized by Officer Smith had been involved in the traffic incident.

 "The existence of probable cause depends on whether, in the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005) (internal quotation marks omitted).  "[P]robable cause may be based on the collective knowledge of all law enforcement officers involved in an investigation and need not be based solely upon the information within the knowledge of the officer on the scene if there is some degree of communication."  United States v. Wells, 347 F.3d 280, 287 (8th Cir. 2003).

The Court finds, under the totality of the circumstances in this case, that police had probable cause to seize Defendant's vehicle without a warrant under the automobile exception as they suspected that the vehicle itself was an instrumentality of a crime.  Ms. Weis specifically stated to Officer Smith that Defendant Perkins was the individual driving the vehicle that rear ended her vehicle and forced her off the road.  The fact that she did not identify the vehicle that

Defendant was driving and appeared to have been drinking, in and of itself, does not, when considering the totality of the circumstances, defeat a finding of probable cause that the subject vehicle had been involved in the traffic incident. Officer Smith had been informed by another officer that Defendant normally drove a large black SUV (Chevy Tahoe or Yukon), and as noted above, officers are entitled to rely on the collective knowledge of others officers so long as it has been communicated to them. As such, although the victim had not specifically provided a description of the subject vehicle, based on the collective information of the identity of the alleged suspect driver and the information from other knowledgeable law enforcement personnel as to the type of vehicle the alleged suspect normally drove, police had a description of a vehicle suspected to be involved in the incident. While Officer Smith was investigating a possible match of the suspect vehicle, an individual identified the Defendant and his brother as they drove past the officer at a high rate of speed. Officer Smith then pursued that vehicle and eventually placed Defendant under arrest. At that time, Officer Smith observed that Defendant had burrs on his clothing and gray-colored mud on his boots and clothing.

Officer Smith later discovered a vehicle—matching the description of the vehicle Defendant was reported to normally drive—a short time after the arrest and in a wooded area of a trail, which was consistent with the burrs Officer Smith had observed on Defendant's clothing. In the location of the vehicle, Officer Smith also observed gray-colored mud that matched, in color and texture, the mud he had observed on Defendant's boots and clothing. More importantly, the vehicle he discovered had sustained significant front-end damage which was entirely consistent with the type and extent of damage expected from the suspected vehicle that had earlier rear ended Ms. Weis's vehicle. While Officer Smith testified that he had at times observed other vehicles in the area being driven with some minor damage, he specifically stated

that it would not have been normal to observe vehicles with this extent of damage. And while Defendant had stated to Officer Smith that he had not been driving the vehicle that collided with Ms. Weis's vehicle, it is merely one factor to consider in the totality of the circumstances. The vehicle was not parked on private property and Officer Smith was able to observe the damage to the vehicle and the mud in this wooded area where the vehicle was sitting all in plain view. As such, there can be no reasonable expectation of privacy as to the location where the vehicle was parked and seized. See Capraro, 44 F.3d at 691 (finding that the seizure of a vehicle from the defendant's driveway did not violate an individual's Fourth Amendment rights because "the truck's position in clear public view on [the defendant's] driveway eliminated any privacy expectation otherwise resulting from its location on private property"); United States v. Cooper, 949 F.2d 737, 747 (5th Cir. 1991) ("[W]e hold that the police may seize a car from a public place without a warrant when they have probable cause to believe that the car itself is an instrument or evidence of crime."). Furthermore, Officer Smith was able to start the vehicle with the key that had been found on Defendant's person pursuant to a search incident to arrest.

Under the totality of these circumstances, the Court finds that probable cause existed for police to seize Defendant's vehicle without a warrant. See Linderman, 2008 WL 199913, at *2-3 (finding that probable cause existed to seize and search a vehicle crashed into a ditch because the vehicle matched the description of the vehicle the defendant had used to flee from police); Sims, 424 F.3d at 692-93 (finding probable cause existed to seize the defendant's vehicle because witnesses to the robbery had identified the defendant as the assailant and had reported a description of the vehicle seen leaving the scene of the crime); Capraro, 44 F.3d at 691 (finding probable cause existed to seize a vehicle because it matched the victim's description of the vehicle used in a crime); United States v. Widi, 686 F. Supp.2d 107, 114-15 (D. Me. 2010)

(explaining that "if the officers had probable cause to believe that the vehicle was the instrumentality of a crime, the warrantless seizure" of the vehicle in plain view would not have violated the defendant's Fourth Amendment rights).

## III.    CONCLUSION

1.    Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that Defendant's motion to suppress evidence [Docket No. 23] be denied.


Dated: January 11, 2013                                    s/Leo I. Brisbois
                                                           LEO I. BRISBOIS
                                                           United States Magistrate Judge


**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by January 25, 2013**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.